**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

GINA PIPKE, on behalf )
of D.G.P., a minor, )
 )
          Plaintiff, )
 )
 ) Case No. CIV-18-251-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
          Defendant. )

**OPINION AND ORDER**

Plaintiff Gina Pipke (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying benefits for her son D.G.P. under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that D.G.P. was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability for a child under the age of eighteen according to the Social Security Act is defined as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20

C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for a child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v.*

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments. If the claimant is engaged in substantial gainful activity or has no severe impairment or combination of impairments, he is considered not disabled. Otherwise, the claimant's impairment is measured against the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P., App.1. A claimant suffering from an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listed impairment, and that meets the duration requirement, is considered disabled. *See* 20 C.F.R. § 416.924(a)-(d)(2).

*Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

D.G.P. was born on December 15, 2008, and was eight (8) years old at the time of the ALJ's decision. He was in second grade at the time of the administrative hearing. Claimant alleges D.G.P. is disabled due to congenital pulmonary airway malformation, asthma, and Achilles tendon contracture.

**Procedural History**

On February 4, 2015, Claimant protectively filed an application on behalf of D.G.P. for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. The application was denied initially and upon reconsideration. On July 12, 2017, Administrative Law Judge("ALJ") John W. Belcher conducted an administrative hearing in Tulsa, Oklahoma, at which Claimant and D.G.P. were present. On September 7, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on June 8, 2018, it denied review. As a result, the decision of the ALJ

represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step three of the sequential evaluation. He determined that while D.G.P. suffered from severe impairments, he did not meet, medically equal, or functionally equal a listing. (Tr. 15-16).

**Errors Alleged for Review**

Claimant asserts the ALJ committed error by (1) failing to properly evaluate whether D.G.P. meets or medically equals a listed impairment; (2) failing to find D.G.P. has an impairment or combination of impairments that functionally equals the severity of the listings; and (3) failing to perform proper determination regarding D.G.P.'s report of symptoms.

**Consideration of a Listing**

In his decision, the ALJ found D.G.P. suffered from severe impairments of congenital pulmonary airway malformation, asthma, and Achilles tendon contracture. (Tr. 15). He determined D.G.P. (1) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and (2) did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (Tr. 15-25). As a result, the ALJ concluded D.G.P. had

4

not been disabled since February 4, 2015, the date the application was filed. (Tr. 25).

Claimant contends the ALJ failed to properly evaluate whether D.G.P. met or medically equaled a listed impairment. Specifically, Claimant contends that that ALJ's discussion was inadequate and conclusory.

It is a claimant's burden to establish that his impairments meet or equal a listed impairment. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). At step three of the sequential evaluation, an ALJ is required to determine whether a claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ is required to discuss the evidence and explain why he found Claimant was not disabled at step three. *Id*. However, a deficient step-three analysis does not require reversal if the ALJ's analysis in subsequent steps provide "detailed findings . . . that confirm rejection of the listings in a manner readily reviewable." *Fischer-Ross*, 431 F.3d at 734.

Although he primarily did so prior to applying the six functional equivalence domains at step three, the ALJ did discuss the evidence, the listings he considered, and explained that the evidence required to meet or medically equal the listings was not

present in the record. (Tr. 15-19). Specifically, the ALJ considered Listing Section 101.00 (Musculoskeletal), Listing Section 103.00 (Respiratory), and Listing Section 105.00 (Digestive). He considered D.G.P.'s impairments in combination and determined that "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Tr. 15-16). Based upon the ALJ's overall discussion of the evidence in his step-three analysis, the Court finds no error by the ALJ at this stage of step three.

Claimant also argues the ALJ erred in finding that D.G.P.'s impairments or combination of impairments did not functionally equal a listing. She asserts the ALJ failed in assessing the following domains of functioning for D.G.P.: (i) interacting and relating with others; (ii) moving about and manipulating objects; (iii) caring for yourself; and (iv) health and physical well-being.

When determining if an impairment is functionally equivalent to a listing, the ALJ considers how a child functions within six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being. 20 C.F.R. §

416.926a(b)(1)(i)-(iv). In order to find disability, the child must have an extreme limitation in at least one domain or a marked limitation in two domains. 20 C.F.R. § 416.926a(a).

With regard to the domain of interacting and relating with others, Claimant contends the ALJ failed to account for evidence in the record establishing that D.G.P. did not go to school with other children, could not attend birthday parties, and missed many school functions because of illness. Claimant asserts the ALJ did not fully discuss evidence of the issues D.G.P. faced with his feeding tube, his worsening condition and diagnosis of Reactive Airway Disease ("RAD"), and the testimony by Claimant and D.G.P. on the issue. However, the ALJ thoroughly discussed the testimony of D.G.P. that he played video games, kicked a soccer ball, and played basketball with friends. The ALJ acknowledged the testimony of Claimant that D.G.P. had some trouble burping and or vomiting (when sick) through the tube, but that he could eat normally. He discussed D.G.P.'s embarrassment of having the tube and being home schooled. The ALJ also discussed Claimant's testimony that D.G.P. tried to play with other kids, but he was limited because of his respiratory issues and his feeding tube. The ALJ discussed the teacher report from Michelle Stiger of Epic Charter Schools. He noted Ms. Stiger only saw D.G.P. about every two months. On her report, Ms. Stiger stated she was unaware of problems D.G.P. had with interacting and relating with others. The ALJ also noted the

7

function report completed by Claimant, wherein she indicated D.G.P.'s physical impairments did not affect his behavior with others. (Tr. 19). He also noted the opinions of the pediatric consultants that D.G.P. had no limitation with interacting and relating to others. (Tr. 20). The ALJ considered the evidence, including the testimony of both Claimant and D.G.P. and determined D.G.P. had no limitation in interacting and relating with others based upon the teacher questionnaire, function report, and the record as a whole. (Tr. 22). The Court finds the ALJ accounted for the evidence in the record and finds no error with regard to this domain.

With regard to the domain of moving about and manipulating objects, Claimant contends the ALJ failed to fully take into account D.G.P.'s limitations associated with his "severe" asthma, congenital pulmonary airway malformation, and RAD. She contends that the ALJ failed to account for the problems D.G.P. had with his legs and becoming winded when playing with other children and trying to ride a bike. D.G.P. had issues standing and going up and down stairs. In the decision, the ALJ discussed D.G.P.'s testimony that his legs sometimes hurt form the knees down when walking or standing. He also noted D.G.P.'s testimony that he sometimes played basketball and kicked a soccer ball. The ALJ also discussed Claimant's testimony that D.G.P. sometimes had to sit down because he was winded and that he had problems with his

ankles and feet and going up and down stairs. (Tr. 17). The ALJ determined that D.G.P. had less than a marked limitation in the domain. He referenced that D.G.P. had chronic toe walking with tight Achilles tendons bilaterally, but that after surgery in June of 2015 and physical therapy, D.G.P. was found to be neurologically intact in August of 2016. D.G.P.'s physician noted he was doing well after Achilles tendon lengthening and did not anticipate further problems. (Tr. 23). Moreover, the pediatric consultants determined D.G.P. had less than marked limitations in the ability to move about and manipulate objects. (Tr. 20). The Court finds the ALJ accounted for the evidence in the record and finds no error with regard to this domain.

The ALJ also considered the domain of caring for yourself. Claimant asserts the ALJ's determination that D.G.P. has no limitation in this domain defies common sense because he is unable to burp himself and clean his feeding tube. With regard to this domain, the ALJ discussed D.G.P.'s testimony that his mom helps him take a bath, but he dresses himself and brushes his teeth. He does chores around the house, including sweeping and taking care of the animals. Claimant testified D.G.P. has a feeding tube, and she must help him when he needs to burp or vomit. (Tr. 17). Ms. Stiger indicated in the teacher report that D.G.P. did not have any issues she was aware of with caring for himself. Claimant indicated on D.G.P.'s function report that he could take care of

9

his personal needs. (Tr. 19). The ALJ also noted the pediatric consultants' opinions that D.G.P. had no limitations in caring for himself. (Tr. 20). Based on this evidence, the ALJ concluded D.G.P. had no limitation in the ability to care for himself. (Tr. 23-24). The Court finds no error for this domain.

Finally, the ALJ considered the domain of health and physical well-being. He noted D.G.P.'s history of congenital pulmonary malformation, right lower lobe/right middle lobe re-sectioning as an infant, esophageal duplication cyst re-section, a feeding tube, ten episodes of pneumonia, with more than five hospitalizations, and recurrent episodes of increased cough, wheezing, and dyspnea. D.G.P. also had several episodes of croup. The ALJ noted D.G.P. was assessed with asthma, chronic cough, dysphagia, and pneumonia in 2013, and he was assessed with asthma, cough, allergic rhinitis, and upper respiratory infection in 2014. D.G.P. was diagnosed with extremely tight Achilles tendon complex bilaterally and underwent surgery in 2015. His feet had improved by August of 2016. D.G.P.'s asthma and gastric disorders also had shown improvement, he had fewer upper respiratory infections, and he could eat normally, although he still utilized a G-tube for burping and vomiting. (Tr. 24-25). The ALJ discussed the testimony of both Claimant and D.G.P. (Tr. 16-17) and noted the opinion of the pediatric consultant that D.G.P. had marked limitations in the domain of health and physical well-being. (Tr. 20). The Court

10

finds the ALJ's conclusion that D.G.P. had marked limitation in his health and physical well-being is supported by the record.

After assessing all the domains of functioning, including those challenged herein by Claimant, the ALJ concluded that because D.G.P. did not have an impairment or combination of impairments that resulted in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning, D.G.P. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (Tr. 16-25).

**Evaluation of Complaints and Symptoms**

Claimant contends the ALJ improperly considered her testimony and D.G.P.'s testimony regarding his symptoms, impairments, and limitations. She asserts the ALJ failed to affirmatively link his findings to substantial evidence in the record as legally required.

Deference must be given to an ALJ's evaluation of Claimant's credibility, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can

assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of D.G.P.'s reports of disabling symptoms, the ALJ noted the two-step process for the evaluation of symptoms. (Tr. 16). He determined D.G.P.'s medically determinable impairments could reasonably cause his alleged symptoms, but he found that the statements regarding the intensity, persistence, and limiting effects of D.G.P.'s symptoms were not entirely consistent with the evidence in the record. (Tr. 17). In making these determinations, the ALJ summarized the medical evidence, Claimant's testimony, D.G.P.'s testimony, the teacher report, and the function report completed by Claimant in detail. He made several references from the record showing D.G.P.'s conditions had shown improvement over time. He noted D.G.P. could eat normally, his asthma and pulmonary functions had improved, and D.G.P. was having fewer respiratory illnesses. The ALJ also noted evidence that D.G.P. was recovering from his Achilles tendon surgery and that he could walk better than before the surgery. He referenced that there was no evidence of any mental health problems. (Tr. 16-19). The Court finds no error with the ALJ's assessment of

12

D.G.P.'s symptoms, as it is supported by the medical record.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE